UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| JAMES MCCORD, ) | |
| ) | CIVIL COMPLAINT |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CASE NO. 2:18-CV-608 |
| RCS CAPITAL PARTNERS, INC., ) | |
| PLAZA SERVICES, LLC, and ELI ) | |
| HAZZAN ) | |
| ) | **JURY DEMAND** |
| Defendants. | |

## COMPLAINT

Now comes JAMES MCCORD ("Plaintiff"), complaining as to the conduct of RCS CAPITAL PARTNERS, INC. ("RCS"), PLAZA SERVICES, LLC ("Plaza"), and ELI HAZZAN ("Hazzan") (collectively, "Defendants").

### NATURE OF THE ACTION

1.  Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq.*, the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. § 227 *et seq.*, the Ohio Consumer Sales Practices Act ("CSPA") under Ohio Rev. Code Ann. § 1345 *et seq.*, and Ohio common law.

### JURISDICTION AND VENUE

2.  This action arises under and is brought pursuant to the FDCPA and TCPA. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and

[ 1 ]

1337 as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendants conduct business in the Southern District of Ohio and substantial portion of the events giving rise to the claims occurred within the Southern District of Ohio.

**PARTIES**

4. Plaintiff is a natural person residing within the Southern District of Ohio.

5. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

6. RCS is a third-party debt collector. *See RCS Capital Partners, Inc.*, Utah.gov (*last visited* June 18, 2018), https://secure.utah.gov/bes/details.html?entity=10444420-0131 ("Company Type: Collection Agency – Foreign").

7. RCS is a New York Corporation headquartered in Amherst, NY that regularly collects upon consumers in Ohio.

8. Plaza is a third-party debt collector. *See Plaza Services LLC*, (*last visited* June 18, 2018), https://plazaservicesllc.com ("This is a communication from a debt collector. . .").

9. Plaza is a South Dakota limited liability company headquartered in Atlanta, Georgia that regularly collects upon consumers in Ohio.

10. Hazzan is listed as the CEO of RCS on the New York State Department of State, Division of Corporations website. *RCS Capital Partners, Inc.*, NYS Dep't of State

(*last visited* June 18, 2018), https://appext20.dos.ny.gov/corp_public/CORPSEARCH. ENTITY_SEARCH_ENTRY.

11. Upon information and belief, Hazzan participates in or oversees the debt collection activities of RCS, making him a third-party debt collector.

12. Hazzan is a natural person and New York resident who regularly collects upon consumers in Ohio.

13. Defendants are "person[s]" as defined by 47 U.S.C. § 153(39).

14. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

15. Plaza is the current holder of an alleged debt originally incurred by Plaintiff with Check 'n Go, a payday lender, for personal purposes.

16. Plaza placed Plaintiff's account with RCS for collection.

17. Upon information and belief, Hazzan oversaw RCS's collection activities with regard to Plaintiff.

18. Between June 1, 2018 at the latest, and about June 13th, 2018, RCS called Plaintiff at least once per day, usually around noon.

19. Plaintiff recognized RCS's phone number, and he answered each time RCS called. Often, when Plaintiff answered a call from RCS, he experienced several seconds of dead air before the call was terminated by RCS. When this happened, RCS

called again within a few minutes. Sometimes this process repeated three or four times before Plaintiff encountered a live person on the other end of the line.

20. During the calls, RCS represented that it had the authority to negotiate a final settlement of Plaintiff's purported debt.

21. On or about June 8th, Plaintiff asked RCS to stop calling him until June 29th because he would not be able to settle the purported debt until then. RCS agreed.

22. Nevertheless, RCS continued to call Plaintiff daily, sometimes multiple times per day, until at least June 13th.

23. RCS called Plaintiff at least nine times after he asked RCS to stop calling him.

24. During most of the calls, RCS informed Plaintiff that the instant call would be the last call before Plaza filed a lawsuit against Plaintiff.

25. Plaza has not filed a lawsuit against Plaintiff.

26. A Courtlink search conducted by Plaintiff's counsel did not reveal any instances of Plaza bringing litigation against other purported debtors.

27. Neither RCS nor Plaza has sent Plaintiff any documentation by mail.

28. Plaintiff has suffered concrete harm as a result of Defendants' actions, including but not limited to invasion of privacy, aggravation that accompanies collection telephone calls, emotional distress, and increased usage of his telephone services.

### COUNT I — VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

29. Plaintiff realleges the paragraphs above as though fully set forth herein.

[ 4 ]

30. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

31. Defendants are "debt collector[s]" as defined by § 1692a(6) of the FDCPA because the principal purposes of their businesses are the collection of debts, and because they use the instrumentalities of interstate commerce to do so. In the alternative, Defendants are "debt collector[s]" under § 1692(a)(6) because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

32. RCS and Plaza identify themselves as debt collectors and are engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed, due, or asserted to be owed or due to others.

33. Because Plaza is a debt collector, Plaza is vicariously liable for debt collection actions taken by RCS while acting on Plaza's behalf. "[A]n entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000).

34. Employees and officers of debt collection agencies are themselves liable as debt collectors where they "regularly engage[], directly or indirectly, in the collection of debts," including through "oversee[ing] compliance." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008).

35. Hazzan is therefore liable for RCS's violations of the FDCPA committed under his supervision, including, on information and belief, the violations described in this Count.

[ 5 ]

36. The subject debt is a "debt" as defined by FDCPA § 1692a(5) because the debt owed or due or asserted to be owed or due to another arises out of a transaction for personal, family, or household purposes, being in this case a payday loan used for personal purposes.

    **a. Violations of FDCPA § 1692e(5).**

37. The FDCPA, pursuant to 15 U.S.C. § 1692e(5), prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken."

38. A debt collector's threat to bring a lawsuit that it does not intend to bring violates § 1692e(5). *See Baker v. G.C. Services Corp.*, 677 F.2d 775, 778–79 (9th Cir. 1982).

39. RCS informed Plaintiff several times that a particular call would be its final call before Plaza brought litigation against Plaintiff. The obvious implication of this statement was that Plaza would bring litigation against Plaintiff shortly after the call if Plaintiff did not pay to settle the purported debt.

40. Plaza has not brought such litigation against Plaintiff, and a Courtlink search conducted by Plaintiff's counsel did not reveal any instances of Plaza bringing similar litigation against other purported debtors.

41. Defendants violated § 1692e(5) when RCS stated several times that a particular call to Plaintiff was the final call before Plaza would bring litigation, where Plaza did not intend to bring litigation, let alone to do so immediately. The natural consequence of these improper threats was to confuse and worry plaintiff.

b. **Violations of FDCPA § 1692f.**

42. The FDCPA, pursuant to 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

43. Defendants violated § 1692f when RCS unfairly and unconscionably attempted to collect on a debt by continuously calling Plaintiff after being notified to stop.  Attempting to coerce Plaintiff into payment by placing voluminous phone calls without his permission is unfair and unconscionable behavior.  These means employed by RCS only served to worry and confuse Plaintiff.

44. As pled above, Plaintiff has been harmed and suffered damages as a result of Defendants' illegal actions through RCS.

c. **Violation of FDCPA § 1692g.**

45. The FDCPA, pursuant to 15 U.S.C. § 1692g, requires each new debt collector to send written notice explaining certain of the consumer's rights under the FCDPA with, or within five days of, their initial communication with a consumer. *Wright v. Ocwen Loan Servicing, L.L.C.*, 2013 WL 5532687, at *__ (E.D. Mich. Oct. 7, 2013); *Turner v. Shenandoah Legal Group, P.C.*, 2006 WL 1685698, at *11 (E.D.Va. June 12, 2006).

46. Plaintiff has not received any mailings from RCS.

47. Defendants violated § 1692g when, following its initial telephone conversation with Plaintiff on or before June 1, 2018, RCS failed to send the required § 1692g notice by mail within five days.  RCS's failure to comply with the requirements

[ 7 ]

of § 1692g prevented Plaintiff from learning of his rights and thereby magnified the confusing and worrying effect of RCS's collection calls.

## COUNT II – VIOLATIONS OF THE TCPA

48. Plaintiff realleges the above paragraphs as though fully set forth herein.

49. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(A), prohibits calling persons on their cellular phones using an ATDS without their consent.  The TCPA, under 47 U.S.C. § 227(b)(1), defines an ATDS as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

50. The phenomenon of abandoned calls such as those repeatedly experienced by Plaintiff is a well-known sign of the use of an ATDS.  *See De Los Santos v. Millward Brown, Inc.*, 2014 U.S. Dist. LEXIS 88711 at *9–10 (S.D.Fla. Jun 29, 2014) (citing FCC, Consumer Guide:  Unwanted Telephone Marketing Calls 2 (2013), http://www.fcc.gov/cgb/consumerfacts/tcpa.pdf).

51. Upon information and belief, RCS used an ATDS in connection with its communications directed towards Plaintiff's cellular phone.

52. At no time did Plaintiff give prior express consent to RCS permitting it to contact him via an ATDS.

53. Any purported consent that the Plaintiff may have given to the original creditor was revoked by Plaintiff's demand that RCS cease contacting him.

54. RCS violated the TCPA by placing at least nine phone calls to Plaintiff's cellular phone using an ATDS without his consent.

55. Plaza is also liable for violations of the TCPA committed by its agent, RCS, under the federal common law of agency because Plaza hired RCS to collect upon Plaintiff on its behalf and under its control, and specifically because RCS represented that it had authority to settle the debt on behalf of Plaza. *See Keating v. Peterson's Nelnet, LLC*, 615 Fed.Appx. 365, 371–72 (6th Cir. 2015) (stating that the common law of agency applied and holding that a collection agency was not an agent in large part because it did not have the authority to settle the debt on behalf of the debt holder).

### COUNT III – VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT

56. Plaintiff realleges the above paragraphs as though fully set forth herein.

57. The CSPA, pursuant to R.C. 1345.02(A), states that "[n]o supplier shall commit an unfair or deceptive practice in connection with a consumer transaction."

58. Plaintiff is a "person" as defined by R.C. 1345.01(B).

59. Defendants are "supplier[s]" as defined by R.C. 1345.01(C). *Taylor v. First Resolution Invest. Corp.*, 72 N.E.3d 573, 600 (Ohio 2016), *cert. denied sub nom. First Resolution Inv. Corp. v. Taylor-Jarvis*, 137 S. Ct. 398 (2016).

60. Debt collection is a "consumer transaction" as defined by R.C. 1345.01(A).

61. R.C. §1345.09(B) thus grants Plaintiff a private right of action against Defendants for $200 per violation of the CSPA, plus noneconomic damages of up to $5,000 per violation in an amount to be determined at trial, plus attorney fees.

62. Under the CSPA, the Court may award a multiplier for attorney fees for contingency fee cases, such as this one. *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 383 (6th Cir. 1993) (citing *Bittner v. Tri-Cty. Toyota, Inc.*, 569 N.E.2d 464 (Ohio 1991)).

### a. Violations of the Fair Debt Collection Practices Act.

63. Defendants committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A), when RCS engaged in acts and practices in violation of the FDCPA as set forth above.

64. Such acts and practices have been previously determined by Ohio courts to violate the CSPA, R.C. 1345.01 *et seq*.  *See, e.g.*, *Kelly v. Montgomery Lynch & Assocs., Inc.*, No. 1:07-CV-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008) ("[A]ny violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03").

65. Defendants, through RCS, committed such actions after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

66. Defendants further committed unfair, deceptive, and unconscionable acts or practices in violation of the CSPA, R.C. 1345.02(A) and 1345.03(A), when RCS engaged in or used unfair means to collect a debt.

67. Defendants committed unfair, deceptive, and unconscionable acts or practices in violation of the CSPA when RCS communicated with Plaintiff after being told to stop and placed an oppressive number of telephone calls to Plaintiff.

68. Such acts and practices have been previously determined by Ohio courts to violate the CSPA.  *See, e.g.*, *State ex rel. Celebrezze v. Scandinavian Health Spa, Inc.*, No. CV863-1158, 1986 WL 363150, at *2 (Ohio Com. Pl. Mar. 31, 1986) ("A supplier who, in its collection of consumer debts, engages in acts, the natural consequence of which is to harass consumers violates O.R.C. § 1345.02(A)"); *State ex rel. Fisher v. Lasson*, No. CV 92

[ 10 ]

10 0193, 1994 WL 912252, at *5 (Ohio Com. Pl. Oct. 14, 1994) (repetitive calls can be unconscionable).

69. Defendant's actions, through RCS, therefore violated the CSPA, and Plaintiff is entitled to compensation.

### b. Violations of the Telephone Consumer Protection Act.

70. Violations of the TCPA (at least to the extent that they are unfair, deceptive, or unconscionable) are violations of the CSPA. *See, e.g.*, *Ambrose v. Prime Time Enterprises*, No. CV 04 547298, 2005 WL 646147, at *1 (Ohio Com. Pl. Feb. 23, 2005); *Tower City Title Agency, Inc. v. Phillips*, 2008-Ohio-957, ¶ 5 ("Ohio courts have found that a violation of the TCPA also results in a violation of R.C. 1345.02 of the Ohio CSPA.").

71. RCS, and through it Plaza, violated the CSPA by using an ATDS in violation of the TCPA, as set forth above.

72. Such acts and practices have been previously determined by Ohio courts to violate the CSPA. RCS, and through it Plaza, committed such actions after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

73. RCS's actions on behalf of Plaza were unfair, deceptive, and unconscionable under the CSPA because they were intended to harass Plaintiff and intimidate him into making payments.

74. RCS's actions on behalf of Plaza therefore violated the CSPA, and Plaintiff is entitled to compensation for each and every violation.

      **c. Violations of R.C. 1345.02(A) and R.C. 1345.03(A).**

75. RCS, and through it Plaza, committed unfair, deceptive, and unconscionable acts or practices in violation of the CSPA, R.C. 1345.02(A) and 1345.03(A), by engaging in or using unfair means to collect a debt.

76. RCS, and through it Plaza, committed unfair, deceptive, and unconscionable acts or practices in violation of the CSPA, R.C. 1345.02(A) and 1345.03(A), by communicating with Plaintiff after being told to stop and by placing repeated phone calls to Plaintiff.

77. Such acts and practices have been previously determined by Ohio courts to violate the CSPA, R.C. 1345.01 *et seq*. *See, e.g.*, *State ex rel. Celebrezze v. Scandinavian Health Spa, Inc.*, No. CV863-1158, 1986 WL 363150, at *2 (Ohio Com. Pl. Mar. 31, 1986) ("A supplier who, in its collection of consumer debts, engages in acts, the natural consequence of which is to harass consumer's violates O.R.C. § 1345.02(A)"); *State ex rel. Fisher v. Lasson*, No. CV 92 10 0193, 1994 WL 912252, at *5 (Ohio Com. Pl. Oct. 14, 1994) (repetitive calls can be unconscionable).

78. RCS, and through it Plaza, committed such actions after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

## COUNT V – INVASION OF PRIVACY

79. Plaintiff restates and realleges the paragraphs above as though fully set forth herein.

80. Ohio recognizes a cause of action for invasion of privacy based on "wrongful intrusion into one's private activities in such a manner as to outrage or cause

[ 12 ]

mental suffering, shame or humiliation to a person of ordinary sensibilities." *Sustin v. Fee*, 69 Ohio St.2d 143, 145, 431 N.E.2d 992, 993 (Ohio 1982) (quoting *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (Ohio 1956)).

81. RCS, and through it Plaza, invaded Plaintiff's privacy and intruded on his solitude and seclusion by intentionally and persistently causing his cellular phone to ring and by attempting to contact him when he desired to be left alone.

82. Defendant's pattern of repeatedly calling Plaintiff in his home was so outrageous that it would cause shame or humiliation to a person of ordinary sensibilities, and Plaintiff was injured by this conduct.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment as follows:

**a.** Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

**b.** Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. § 1692k(a)(2)(A);

**c.** Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1692k(a)(1);

**d.** Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k(a)(3);

**e.** Awarding Plaintiff damages in the amount of $500 for each call made in violation of the TCPA;

**f.**     Awarding Plaintiff treble damages for willful or knowing violations by Defendant of the TCPA;

**g.**     Awarding Plaintiff $200 per violation of the CSPA, plus noneconomic damages up to $5,000 per violation in an amount to be determined at trial, plus reasonable attorney fees;

**h.**     Awarding Plaintiff's counsel an enhancement or multiplier of attorney fees pursuant to the CSPA;

**i.**     Awarding Plaintiff the costs of this action; and

**j.**     Awarding any other relief as this Honorable Court deems just and appropriate.

**<u>A TRIAL BY JURY IS DEMANDED.</u>**


Dated:  June 20, 2018

By:  <u>s/ Jonathan Hilton</u>

Jonathan Hilton (0095742)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 427-5557
jhilton@hiltonparker.com
